IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JESSICA ESQUIVEL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | Civil Action No. 3:15-CV-1326-L |
| | § | |
| **GINA MCCARTHY, Administrator for** | § | |
| **the U.S. Environmental Protection** | § | |
| **Agency,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment (Doc. 15), filed July 8, 2016. Jessica Esquivel ("Plaintiff" or "Esquivel") filed no response to the motion for summary judgment. After careful consideration of the motion, brief, appendix, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment.

**I.      Background**

Esquivel originally filed this action against Defendant Gina McCarthy, Administrator for the U.S. Environmental Protection Agency ("Defendant" or "McCarthy") in the 95th Judicial District Court of Dallas County, Texas, on April 29, 2015. Defendant removed this case to federal court pursuant to 28 U.S.C. § 1442(a)(1) because she is an officer of the United States being sued in her official capacity. Plaintiff asserts claims for race, sex, national origin, and parental status discrimination and retaliation in violation of the Texas Labor Code and Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff also asserts that the Environmental Protection Agency ("EPA" or "Agency") violated her rights under 42 U.S.C. § 1981 ("§ 1981").

Esquivel contends that she was discriminated against when, despite her qualifications, the EPA did not promote her to a position as a GS-7 Environmental Scientist, and when the EPA decreased the amount of hours she was allowed to work.  She further contends that her EPA supervisor retaliated against her after she objected to the supervisor's requirements and that she faced retaliation after she sought guidance from her union.

Defendant contends that Title VII is the sole remedy for Plaintiff's discrimination claims. Defendant also contends that some of Esquivel's claims fail because she did not exhaust her administrative remedies.  Further, Defendant contends that Esquivel lacks sufficient evidence to establish her *prima facie* case or refute Defendant's legitimate, nondiscriminatory reasons for any adverse employment actions she suffered.

## II.     Motion for Summary Judgment Standard - No Response Filed

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence

of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Esquivel filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id.* Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Plaintiff's pleadings are not verified and, therefore, she has presented no summary judgment evidence. Accordingly, the court accepts Defendant's facts as undisputed.

Although Esquivel presented no summary judgment evidence, Defendant included some "evidence" in her appendix that could arguably qualify as competent summary judgment evidence that supports Esquivel's claims. To the extent that such evidence is competent summary judgment evidence, the court will address it; however, as Plaintiff did not file a response, the court is under no duty to sift through the record to find evidence that supports a nonmovant's opposition to a motion for summary judgment. *Ragas*, 136 F.3d at 458. Further, it is not incumbent upon the court to educate or instruct counsel as to the strategy to be pursued during the course of litigation.

## III.   Undisputed Facts

Esquivel was employed with the EPA from April 30, 2006, until January 1, 2012. She first joined the Agency through the Student Temporary Employment Program ("STEP") as an Office Automation Clerk. When Plaintiff joined the Agency, she was a student at Cedar Valley Community College, and her academic major was Political Science. On November 9, 2008,

Plaintiff was appointed as a Student Trainee in Physical Science through the EPA's Student Career Experience Program ("SCEP") by an agreement with the University of Texas at Arlington ("UTA"), where she was then enrolled.  SCEP "is a planned, progressive educational program that provides for the integration of a student's academic studies and Federal work experience with the potential of non-competitive conversion into the Federal career service."  Def.'s App. 18.  SCEP requires participants to work in positions "related to their academic field of study and/or career goals."  *Id.* at 26.

During the course of Esquivel's employment through SCEP, several supervisors discussed the importance of completing physical science coursework to qualify for a permanent position with the EPA.  In 2008, second-level supervisor Michael Michaud ("Michaud"), who subsequently retired, informed Plaintiff that she only needed to complete 24 hours of coursework in science to qualify for a position as an Environmental Scientist.  In 2010, Plaintiff's direct supervisor, Carol Peters-Wagon ("Peters-Wagon") again informed Esquivel that she needed to complete 24 hours of coursework in a technical or physical science field to be considered for a permanent position.  Peters-Wagon also encouraged Plaintiff to meet with Human Resources ("HR") staff to verify that her coursework met SCEP requirements.  On April 16, 2010, second-level supervisor Jerry Saunders ("Saunders"), who replaced Michaud, informed Plaintiff that her Political Science coursework did not satisfy the requirements for an Environmental Scientist position and encouraged her to consult with HR.  Plaintiff consulted with HR and was informed that she needed at least 24 hours of science-related coursework to meet SCEP requirements.

Contrary to the information from Michaud and HR, in January 2011, Saunders met with Esquivel and informed her that the Agency could not give her a permanent position if she did not obtain a degree in a physical science or a technical field.  Saunders told Esquivel that Division

Director John Blevins ("Blevins") had determined that only individuals with a technical or science degree could serve as Environmental Scientists.  In the few years prior to Esquivel's termination, Blevins had only hired individuals that had obtained science or technical degrees as Environmental Scientists.

During the course of her employment with the EPA, Esquivel's work schedule changed several times.  Esquivel's schedule was changed because of requests that she made, her class schedule, and the Agency's workload and allocated work hours.  On July 2011, Esquivel graduated with a degree in Political Science.  She completed 24 hours of physical science courses and received a Geology minor.  The EPA paid for Esquivel's Geology coursework.  On September 22, 2011, Saunders issued Esquivel a notice of proposed removal based on her failure to satisfy the requirements for a noncompetitive conversion from SCEP to a permanent position.  Plaintiff submitted a written reply to the notice on October 7, 2011.  Subsequent to her written reply, she also provided an oral reply on November 21, 2011.  The meeting was attended by Plaintiff; Blevins; Zakiya Davis ("Davis"), Plaintiff's union representative; and Tony Clifton, an employee relations specialist.  During the meeting Blevins offered Plaintiff the opportunity to remain employed through SCEP if she agreed to attend school and obtain a degree in Geology at the Agency's expense.  Esquivel requested that she be promoted immediately to a GS-7 Environmental Scientist position, that her work hours be increased while she attended school, and that the Agency pay for her to obtain her Master's degree in Geology.  Blevins approved the request to pay for Plaintiff's Master's degree.  He denied her request for an immediate promotion because she did not have the required recommendation of her supervisor for the position, and he denied her request for an increase in hours because of the Agency's budgetary constraints.  On December 7, 2011,

Plaintiff declined the Agency's offer to remain in SCEP and return to school at its expense.  On December 15, 2011, Plaintiff received written notice of her termination effective January 1, 2012.

On January 2, 2012, Esquivel contacted an Equal Employment Opportunity ("EEO") counselor.  On February 9, 2012, she filed a complaint with the EPA's Office of Civil Rights ("Civil Rights Office") and alleged that the Agency discriminated against her on the basis of her race, sex, national origin, and parental status.  In setting forth her reasons for the allegedly discriminatory acts, Esquivel contends that: (1) she was terminated from federal service on January 1, 2012; (2) she received an e-mail on September 15, 2011, from Michaud, which stated that he had a conversation with Deputy Associate Director Gilrein in July 2008, and Gilrein said that Esquivel was "a young Hispanic female without education and a premature baby that is going to take a lot of care"; (3) she was not converted to a Federal Service employee from SCEP in June 2011; (4) she was not promoted to a GS-7 Environmental Scientist in June 2011; (5) she was not allowed to work full-time between May 2011 and January 2012 similar to other students; and (6) she was not allowed to work 30 hours per week between January and March 2011 like other students.  Def.'s App. 234.  The Civil Rights Office accepted her claims that she was terminated and that she was not allowed to work full-time between May 2011 and January 2012.  *Id.* at 235.  Those claims were assigned to an EEO Investigator for further review.  The Civil Rights Office dismissed Esquivel's remaining claims as untimely or for failure to state a claim.  The Civil Rights Office determined that the dismissed claims could be considered as background evidence during the course of the investigation pursuant to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  *Id.*  On June 26, 2014, an administrative law judge issued a final decision denying all of Esquivel's claims.

IV.     **Analysis**

A.     **Exhaustion of Remedies**

Defendant contends that Plaintiff's claims that relate to her work hours between January and May 2011, and her not being promoted to a GS-7 level in June 2011 fail for lack of jurisdiction because she did not timely exhaust her administrative remedies.  According to Defendant, Esquivel contacted an EEO counselor on January 2, 2012, which is over 72 days after the alleged discriminatory actions occurred.  Title 29 of the Code of Federal Regulations requires aggrieved persons who believe that they have been discriminated against on the basis of race, sex, or national origin to contact a Counselor within 45 days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1).  Defendant, therefore, contends that Esquivel did not administratively exhaust her remedies regarding her claims with respect to her work hours in early 2011, and her failure-to-promote claim in June 2011, and that those claims are barred from being asserted in district court. The court agrees.

For a federal employee, failure to exhaust an employment discrimination claim is jurisdictional.  *Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976) (dismissing a complaint for lack of subject matter jurisdiction when the plaintiff failed to file the complaint within 30 days of the final Agency action as required by § 717(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-15(c).  Even if Plaintiff exhausted her administrative remedies, the claims related to her work hours between January and May 2011, and her not being promoted to a GS-7 level in June 2011 fail because, for reasons stated later, sufficient evidence does not exist to create a genuine dispute of material fact.

**B.      Plaintiff's Texas Labor Code Claims and Section 1981 Claim**

Plaintiff asserts claims for violations of the Texas Labor Code and § 1981. "Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (citing *Brown*, 425 U.S. at 835). As Esquivel's state and § 1981 claims arise out of the same facts as her Title VII claims, they are preempted by Title VII and barred as a matter of law. *Id.* (citation omitted). Accordingly, there is no genuine dispute of material fact as to Plaintiff's Texas Labor Code and § 1981 claims, and Defendant is entitled to judgment as a matter of law with respect to these claims.

**C.      Plaintiff's Title VII Claims**

**1.      Legal Standard for Plaintiff's Claims of Race, Sex (Gender), National Origin,[1] and Parental Status[2] Discrimination**

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In her Petition, Plaintiff does not state whether her race or sex was either the real reason or a motivating factor for her alleged discrimination under Title VII. Out of an abundance of caution, the court will apply the modified *McDonnell Douglass* test. Under the modified *McDonnell Douglass* test, to survive a motion for summary judgment, a Title VII

---

[1] As mentioned earlier, Esquivel contends that Defendant discriminated against her because of her national origin. She states that her national origin is "Mexican-American," but she does not plead facts regarding where she was born. National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farrah Mfg. Co.*, 414 U.S. 86, 88 (1973). Based on Plaintiff's statement, she really appears to be asserting a claim of race discrimination, as neither the record nor the Petition reflects Plaintiff's country of birth or that of her ancestors. In any event, in some contexts national origin and racial discrimination are "so closely related . . . as to be indistinguishable." *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B 1981). In light of the manner in which Plaintiff pleaded her national origin claim, the court will treat it as a claim for race discrimination. Even if national origin is considered as a separate claim, it fails for the same reasons as Plaintiff's race discrimination claim, namely, because there is no evidence to establish a *prima facie* case that other similarly situated students were treated more favorably because Esquivel or her ancestors are from Mexico.

[2] Title VII is the exclusive remedy for federal employees, and it does not include "parental status" as a protected category. Further, Plaintiff has not cited any authority that has read "parental status" into the statute as a protected characteristic or trait. Accordingly, the court concludes that Plaintiff's claim for discrimination based on parental status fails as a matter of law.

**Memorandum Opinion and Order - Page 9**

plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802-04.  If such a showing is made, the burden shifts back to the plaintiff to create a genuine dispute that the articulated "reason is not true, but instead a pretext for discrimination," or that the defendant's "reason, while true, is only one of the reasons for its conduct, and that another 'motivating factor' is [the Plaintiff's] protected characteristic." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citation omitted).

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race or gender. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may, therefore, be enough to prevent summary judgment or judgment as a matter of law. *Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for

**Memorandum Opinion and Order - Page 10**

the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

###         2.         Legal Standard for Retaliation

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct she opposed violated Title VII.  *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted);  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).  The establishment of a *prima facie* case gives rise to an inference of retaliation.  *Montemayor,* 276 F.3d at 692*.*  This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action.  *McCoy*, 492 F.3d at 557.  Once a defendant articulates such a reason, the inference of

discrimination or retaliation raised by the *prima facie* showing drops from the case. *Montemayor,* 276 F.3d at 692.

At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose. *McCoy*, 492 F.3d at 557 (citation omitted). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If the employee fails to prove, or raise a genuine dispute of material fact, that the employer's real reason is a pretext for its allegedly retaliatory conduct, the defendant is entitled to summary judgment. *See McCoy*, 492 F.3d at 561-62.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted). In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

D.      **Discussion**

1.      ***Prima Facie* Case for Race and Sex (Gender) Discrimination**

In Plaintiff's Original Petition ("Petition"), Esquivel contends that she was discriminated against because of her race and sex when she was not allowed to work full-time, and when she was not promoted to a GS-7 level.  With respect to her claim for not being allowed to work full-time, to establish a *prima facie* case of race or sex discrimination, Esquivel must show that: (1) she is a member of a protected class; (2) she is qualified; (3) she experienced an adverse employment action; and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  *Paske v. Fitzgerald,* 785 F.3d 977, 985 (5th Cir.) (citation omitted), *cert. denied,* 136 S. Ct. 536 (2015).

With respect to her failure-to-promote claim, to make out a *prima facie* case of race discrimination under Title VII, Esquivel must show that: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was not promoted, and (4) the position was filled by someone not in the protected class, or that she was not promoted because of her race. *Pratt v. City of Houston, Tex.,* 247 F.3d 601, 606 n.2 (5th Cir. 2001) (citations omitted).

With respect to her failure-to-promote claim, to make out a *prima facie* case of sex discrimination under Title VII, Esquivel must show that she:  (1) is a member of a protected class, (2) was qualified for the position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably.  *Antwi v. CVS Corp.*, 294 F. App'x 145, 146 (5th Cir. 2008) (citation omitted).

With Respect to Esquivel's termination claim, to make out a *prima facie* case of race or sex discrimination under Title VII, she must show that she: (1) is a member of a protected group; (2) was qualified for the position; (3) suffered some adverse employment action; and (4) was treated less favorably than a similarly situated employee outside her protected class, or was otherwise terminated because of a protected characteristic. *Gibson v. Verizon Servs. Org., Inc.,* 498 F. App'x 391, 395 (5th Cir. 2012) (citation omitted).

Defendant contends that Esquivel has not presented evidence to support each elements necessary to establish a *prima facie* case for race and sex discrimination.  For the reasons that follow, the court agrees.

### a.   Esquivel Not Allowed to Work Full-Time

Defendant contends that Esquivel cannot establish *prima facie* cases that she was discriminated against on the basis of her race and sex when she was not allowed to work full-time, as Esquivel has not introduced evidence that she was treated less favorably because she is Hispanic or female than were other similarly situated employees who were not Hispanic or female, under nearly identical circumstances. With respect to her contention that other students were allowed to work full-time between May 2011 and January 2012, Esquivel refers to Nikki Lucky ("Lucky") and other individuals whose names she does not know or cannot recall.  Upon reviewing portions of Defendant's Appendix, the court determines that Esquivel's testimony is too tenuous to establish a *prima facie* case.  Esquivel's assertions are based solely on her observations when she was working part-time.  Esquivel does not know whether other students were working full-time, as she was not there to observe them.  Moreover, she provides no evidence or statements from students or administrators who were aware that students who were not Hispanic or female were allowed to work full-time.  Although she identifies Lucky as being a black female, she presents no

summary judgment evidence of Lucky working full-time.  In her deposition, Esquivel states she observed Lucky only while she (Esquivel) was at work part-time. Def.'s App. 52-53.  Nothing in the record indicates that Esquivel actually knew that other students, who were not Hispanic or female, were allowed to work full-time.  Further, no evidence in Defendant's Appendix, except for conclusory and speculative statements by Esquivel, indicates that students outside Esquivel's protected categories were allowed to work full-time.  Without more evidence, the court determines that Esquivel has not provided sufficient evidence to satisfy her *prima facie* claims in relation to the hours she was allowed to work.  Esquivel has not provided evidence that she was treated less favorably because of her race or sex than were other similarly situated employees who were not Hispanic or female, under nearly identical circumstances.

### b.   Failure to Promote Esquivel Immediately to GS-7 in 2011

According to e-mails contained in Defendant's Appendix, Esquivel's Political Science degree would have met the basic requirements for her promotion to GS-7; however, under the SCEP program, management was required to recommend a student for noncompetitive conversion, and Esquivel did not receive such recommendation.  The EPA defines noncompetitive conversion as "an appointment to a position in the competitive service that is not made by selection from an open competitive examination and which is based on current or prior Federal service." Def.'s App. 23.  The court understands this to mean that had Defendant decided to noncompetitively convert Esquivel, she would have been promoted to the GS-7 position upon graduation without going through the same GS-7 position application process as other candidates who did not participate in SCEP.  From what the court can ascertain, Esquivel appears to be contending that her Political Science degree satisfied the requirement for the GS-7 Environmental Scientist position, and that, based on her performance reviews, she should have received a recommendation to be promoted to

the position.  Esquivel also contends that the reasons she was later told to major in a technical degree such as Geology and the reason she was not recommended for the promotion were because she is Hispanic and female.

Defendant contends that Esquivel has not presented evidence that supports race discrimination as the reason she was not promoted because she has no evidence that either the position was filled by someone who was not Hispanic or female, or that she was not otherwise promoted because of her race.  Defendant further contends that Esquivel has not presented evidence that supports sex discrimination as the reason she was not promoted because she has no evidence that she was replaced by someone who is male, or evidence that others similarly situated were treated more favorably.  In her deposition, Esquivel states that her supervisors communicated the educational requirements for the promotion more frequently with her and provided her different information than that provided to other students.  Specifically, Esquivel stated throughout her depositions that "other people" were treated differently or that they were not required to take certain actions, but she does not state who those people are or identify their race or gender.

By way of example, the court refers to portions of the testimony of Esquivel's 2013 Deposition.  There is no description of the "other students" that Plaintiff is referring to in the record when she states, "Mr. Gilrein would also treat me differently from other students and also from other employees who were not Hispanic.  He denied me opportunities based solely on his discriminatory beliefs and has a set of different standards for me than other people." Def.'s App. 44-45.  Although Esquivel testified that she was treated differently than employees who were not Hispanic, this is not specific enough to satisfy the fourth element of a *prima facie* case for race discrimination, as she does not indicate whether the GS-7 position was filled by someone who was not Hispanic or female, or that she was not otherwise promoted because of her race.  Additionally,

when questioned further about how she was treated differently from other students, Esquivel states that she does not know whether other students were already taking chemistry.  When asked if she knew whether Gilrein governed or supervised other students' selection of classes, she responded that she knew how she felt and did not think other students had to endure that stress. Def.'s App. 48.   Once again, there is no description of the "other students" to whom Plaintiff is referring in the record.

With respect to Esquivel's 2016 Deposition, there are other instances of her subjective and speculative statements.  Esquivel said that she was the "only one being mandated or ruled on what to major in[,] whereas the other students had the liberty or the freedom to choose their major," but when asked who the "other students" were, she responded that she was not sure of their names, and there is no additional information provided about the other students' demographics. Def.'s App. 73-74.  Finally, Esquivel stated that she had "constant meetings regarding [her] major and stuff like that where other students did not have to do the same.  So all this proves Mr. Gilrein's—constant harassment from him and his management [team]." Def.'s App. 79.  There is no description of the "other students" to whom Plaintiff is referring in the record.

During her 2016 deposition, Esquivel concedes that she was not aware of other employees at the EPA who were converted from student status to permanent employment. Def.'s App. 67. Moreover, there is nothing in the record to show that any student who was hired or promoted to the GS-7 Environmental Scientist position did not have a degree in Environmental Science. Esquivel had a degree in Political Science and a minor in Geology.

Esquivel, therefore, has not presented evidence that either the position was filled by someone who was not Hispanic, or that she was not promoted because of her race.  Esquivel has also not presented evidence that she was replaced by someone who is male, or evidence that

another similarly situated male student, was promoted from a Student Trainee in Physical Science to GS-7 Environmental Scientist.  Accordingly, Esquivel fails to prove, or create a genuine dispute of material fact, that the GS-7 Environmental Scientist position was filled by someone who is not Hispanic or female, or that she was not promoted because she is Hispanic or female.

### c.   Esquivel's Termination in 2012

The court is not certain of the specific factual basis for Plaintiff asserting that she was discriminated against with respect to her termination.  The only thing that the court can gleam from the record dates back to the comment by Mr. Gilrein in July 2008 that "he thought [Esquivel] should be let go at that time. [Esquivel] was in the hospital for an extended stay due to problems with her pregnancy resulting in a premature birth.  [Gilrein] stated she is a young Hispanic female without an education and a premature baby that is going to require a lot of care." Def.'s App. 77-78.  To the extent this is the basis for her race and sex discrimination claims, the court addresses her *prima facie* case with respect to her termination on January 1, 2012.

Saunders proposed to remove Esquivel from her position as a Student Trainee in Physical Science for her failure to meet the requirements for noncompetitive conversion.  Blevins offered Esquivel the opportunity to remain employed through SCEP if she agreed to attend school and obtain a degree in Geology at the Agency's expense, but Esquivel refused to accept his offer.  Esquivel, who was a Student Trainee in Physical Science with a degree in Political Science and a minor in Geology, presents no evidence that any other Student Trainee with a degree that met the basic requirements under the applicable section, but was not a physical science or technical field degree and did not receive a recommendation from his or her supervisor, was allowed to remain as a Student Trainee in Physical Science rather than being terminated.  Accordingly, she fails to provide evidence that she was treated less favorably because she is Hispanic or female than were

other similarly situated employees who were not Hispanic or female, under nearly identical circumstances, or that she was otherwise terminated because she is Hispanic or female. For the reasons herein stated, Plaintiff fails to establish a *prima facie* case with respect to her claims of race and sex discrimination.

### 2.      Defendant's Legitimate, Nondiscriminatory Reasons

Even if one were to assume that Esquivel has established a *prima facie* case of race and sex discrimination, Defendant has articulated legitimate, nondiscriminatory reasons for its actions. Defendant produced evidence in the record that they did not allow Esquivel to work full-time from May 2011 to January 2012 because of Esquivel's school schedule and her uncertain future at the EPA. Despite the EPA's request that Esquivel get a technical degree, Esquivel told Saunders that she intended to get a Political Science degree, so the EPA denied her request to work full-time in the summer of 2011 in that it was unsure whether Plaintiff would continue to work at the EPA after graduation. Defendant has also set forth evidence that the legitimate, nondiscriminatory reason Esquivel was not promoted was because she did not meet the promotion requirements. Although she met the promotion degree requirement, she did not receive the required recommendation from her supervisor, a recommendation that all persons must have to be noncompetitively converted from a position as a Student Trainee in Physical Science to a GS-7 Environmental Scientist. Finally, Defendant produced or set forth evidence that Esquivel was terminated because she was not promoted to GS-7. From what the court can ascertain from the record, once Esquivel obtained her degree she was no longer a student, and, therefore, no longer qualified for the Student Trainee position, as she refused to continue working part-time as a student while the EPA paid for her Master's Degree in Geology.

### 3.   Pretext

Once a defendant sets forth its reasons for the adverse action against a plaintiff, the plaintiff must set forth evidence that rebuts each of the legitimate, nondiscriminatory reasons that a Defendant articulates. *Vaughn*, 665 F.3d at 637 (citations omitted). In light of Defendant's articulated reasons for any adverse action it took against Esquivel, the duty then shifts to Esquivel to present evidence that Defendant's reasons are a pretext for race and sex discrimination; or that the stated reasons, while true, are only some of the reasons for Defendant's adverse action against Plaintiff, and other motivating factors are her race and sex.  Although Plaintiff did not respond to Defendant's motion for summary judgment, the court addresses Plaintiff's underlying contention for her claims of race and sex discrimination.  The genesis of this entire action and Plaintiff's charge of discrimination to the EEO is an e-mail that Plaintiff's second-level supervisor, Michaud, sent to her on September 15, 2011, regarding a statement that had been made by Gilrein, more than three years earlier, in July 2008.  For the purposes of summary judgment, the court treats the statement attributed to Gilrein as true.  The statement, however, is far too attenuated to show that McCarthy intentionally discriminated against Esquivel because of her race or sex.  Even though Gilrein's statement could reflect discriminatory animus and is no cause for approbation, the court determines that Gilrein's statement is a "stray remark" that is not evidence of discrimination. "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Rubinstein v. Administrators of the Tulane Educ. Fund,* 218 F.3d 392, 400-01 (5th Cir.2000) (quoting *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996) (brackets in original)).

Gilrein's remark fails to meet this test, as Esquivel did not present any evidence that Gilrein's statement in July 2008 was in any way related to Defendant not allowing her to work full-time nearly three years later from May 2011 to January 2012; Defendant failing to promote her to GS-7 Environmental Scientist three years later in June 2011; or Defendant deciding to terminate Esquivel some three and one-half years later in December 2012. As Plaintiff filed no response, she provides no evidence to rebut Defendant's stated reasons for the adverse action that it took against her, and Defendant is entitled to judgment as a matter of law.

Moreover, after a careful review of the record, the court determines that Esquivel, rather than come forth with competent summary judgment evidence to create an genuine dispute of material fact as to intentional race or sex discrimination, only has a subjective belief or speculates that others were treated more favorably than she was because of her race and sex. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc) (citations omitted). "It is more than well-settled that an employee's subjective belief that [s]he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Id.* at 1430 (citations omitted). Accordingly, Esquivel's claims of race and sex discrimination fail, and Defendant is entitled to judgment as a matter of law on those claims.

### 4.      Title VII Retaliation Claims

In Esquivel's deposition, she states that retaliation occurred when she received a harassing phone call from Saunders and when she was required to have weekly meetings in which she felt as if she was being coerced into majoring in Geology. These reasons, however, are not pled in her

Petition, and Esquivel cannot amend her Petition through deposition testimony; therefore, she is limited to the allegations she set forth in her Petition.  *See Fisher v. Metro. Life Ins. Co*., 895 F.2d 1073, 1078 (5th Cir. 1990).  Moreover, there is even a stronger basis for applying this principle to this case because Plaintiff never filed a response to Defendant's motion for summary judgment. Plaintiff's Petition only alleges the following specific acts of retaliation:

> Defendant, instituted a campaign of retaliation which included preventing her from working additional hours as other students were allowed to work although she had the availability to work additional hours and after she complained of discriminatory practices.  This retaliation was and is due to Plaintiff exercising her rights by opposing a discriminatory practice, making or filing a charge, filing a complaint and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful discriminatory practice.

Pl.'s Orig. Pet. ¶ 65.

It is unclear from Plaintiff's Petition what protected activity prompted the alleged retaliation and when it began to occur.  In her Petition, Plaintiff states, "After Mr. Gilrein found out that Plaintiff was objecting to his requirements that were contrary to her original agreement with the EPA, Mr. Gilrein retaliated against Ms. Esquivel by lowering her hours to twenty hours per week." Pl.'s Orig. Pet. ¶ 45.

Defendant contends that Esquivel's alleged protected activity—"objecting to [Gilrein's] requirements"—is not a protected activity covered by the statute.  Plaintiff does not state to whom she voiced her objections or the nature of her objections.  Her Petition merely states that she objected to the requirements because they were inconsistent with her original agreement with the EPA.  A vague statement in a pleading "without any reference to an unlawful employment practice under Title VII[] does not constitute protected activity." *Paske*, 785 F. 3d at 986 (citations omitted). Esquivel does not prove, or raise a genuine dispute of material fact, that her objections were based on an unlawful employment practice, such as race or sex discrimination, of Defendant under Title

**Memorandum Opinion and Order - Page 22**

VII; or that she had made a charge, testified, assisted, or participated in any manner in an investigation proceeding or hearing under Title VIII.  Thus, she has failed to establish or create a genuine dispute of material fact that she engaged in a protected activity.

Further, the next to last sentence in paragraph 65 of the Petition merely restates the applicable language of 42 U.S.C. § 2000e–3(a), which is even insufficient to defeat a motion to dismiss pursuant to Federal Rule of Civil procedure 12(b)(6).  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (holding that a formulaic recitation of the elements of a cause of action is insufficient to state a claim upon which relief can be granted).  If such allegations are insufficient to defeat a motion to dismiss under Rule 12(b)(6), they necessarily fall short of establishing the necessary proof to create a genuine dispute of material fact regarding retaliation.  As Plaintiff did not file a response and set forth any facts to establish a genuine dispute of material fact, or facts from which the court can reasonably infer, that she was retaliated against because she engaged in protected activity, Defendant is entitled to judgment as a matter of law on her retaliation claim.

Although not pleaded in her Petition, Esquivel contends that her contact with her union qualifies as a protected activity.  Defendant addresses Plaintiff's union contact and contends that this circuit has not determined whether seeking guidance from or talking to a union is protected activity.  To support her position, McCarthy cites a Fifth Circuit case in which the court noted that it "has never squarely determined . . . whether union activities are protected activities under Title VII." *Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007).  In light of the Fifth Circuit having not addressed this issue, the court declines to hold that Plaintiff's communications with her union constitute a protected activity.  Moreover, Plaintiff's deposition testimony establishes that she cannot recall whether she talked to the union before or after the alleged acts of retaliation.

Therefore, she cannot establish that there is a casual connection between her communications with the union and any alleged adverse employment actions.  For these reasons, there is no genuine dispute of material fact with respect to Plaintiff's claims of retaliation, and Defendant is entitled to judgment as a matter of law on these claims.

**VI.     Conclusion**

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists with respect to any of Plaintiff's claims.  Defendant is, therefore, entitled to judgment as a matter of law.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 15) and **dismisses with prejudice** this action.  Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 18th day of October, 2016.

Sam A. Lindsay
United States District Judge